FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 FEB 28 PM 12:04

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| MARCO DUNN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 112-001 |
| ) | (Formerly CR 110-358) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner Marco Dunn, an inmate at the Federal Correctional Institution in Marianna, Florida, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

**I.   BACKGROUND**

In December of 2010, a federal grand jury indicted Petitioner on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of possession of cocaine, in violation of 21 U.S.C. § 844. United States v. Dunn, CR 110-358, doc. no. 1 (S.D. Ga. Dec. 8, 2010) (hereinafter "CR 110-358"). Pursuant to 18 U.S.C. § 3006A, the Criminal Justice Act, the Court appointed Kipler Scott Lamar to represent Petitioner. Id., doc. no. 32.

Pursuant to a written plea agreement, Petitioner pleaded guilty to the first count, felon in possession of a firearm. Id., doc. nos. 30, 31. Petitioner's plea agreement included a broad appeal and collateral attack waiver provision that stated in relevant part:

> [T]o the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

Id., doc. no. 30, p. 3. In addition, by signing the plea agreement, Petitioner attested that he had read and understood the plea agreement, and that the plea agreement accurately set forth the representations made to him by his attorney as well as the terms and conditions of his agreement with the government. Id. at 8. In return, the government agreed to dismiss the remaining count against Petitioner, not to object to a 2-point reduction in Petitioner's offense level for acceptance of responsibility, and to move for an additional 1-point reduction for acceptance of responsibility. (Id. at 1-2.)

The Honorable Dudley H. Bowen, Jr., United States District Judge, held a Rule 11 hearing on March 25, 2011. During that hearing, Petitioner testified under oath that he had read the plea agreement and that his attorney had gone over the plea agreement with him before he signed it. Id., doc. no. 58, pp. 4, 6. Petitioner also responded affirmatively to Judge Bowen's question as to whether he was "entirely satisfied with Mr. Lamar's representation of [him] and his preparation and his handling of [his] case." Id. at 6. In

addition, Judge Bowen summarized the terms of the plea agreement, specifically addressing the appeal and collateral attack waiver as follows:

> You have agreed to waive any right to appeal from the sentence. Now, that also includes a waiver or giving up any right to challenge the fact of conviction by habeas corpus or otherwise. There is one condition on that, and that is, if for some reason I were to sentence you above the guideline range then you would get your right to appeal back. But not any other right.

Id. at 11. Petitioner affirmed that Judge Bowen had correctly summarized the plea agreement as he understood it, including the appeal and collateral attack waiver. Id. at 12.

Judge Bowen also informed Petitioner of the details of the charge against him under Count One and explained that the maximum penalty for that crime was a prison term of not more than ten years, a fine of not more than $250,000.00, a period of supervised release of not more than three years, and a $100.00 special assessment. Id. at 7. Petitioner asserted that he understood both the charge and the maximum penalty. Id. Furthermore, in response to questions asked by Judge Bowen, Petitioner averred that no one had forced or pressured him to plead guilty and that no one had given him any guarantee, prediction, or prophesy that he would receive a particular sentence. Id. at 10-13. Following a government witness's presentation of a factual basis for the guilty plea, id. at 13-17, Judge Bowen asked Petitioner as to what part of that factual basis he disagreed with, and Petitioner responded, "Nothing, sir." Id. at 17. Judge Bowen then asked Petitioner if there was anything else that Petitioner wanted to tell him, to which Petitioner replied, "No, sir." Next, Judge Bowen asked Petitioner what he wanted to do, and Petitioner responded, "I'm going to plead guilty, sir." Id. at 18. Finally, Judge Bowen asked Petitioner if he was guilty as charged in Count One, and Petitioner responded, "Yes, sir." Id.

After the guilty plea hearing, the United States Probation Office prepared a presentence investigation report ("PSI"), to which neither party objected. Id., doc. no. 57, pp. 3-4. During Petitioner's sentencing hearing, which was held on June 29, 2011, Judge Bowen found, consistent with the PSI, that Petitioner had a total offense level of 17 and a criminal history category of III, which yielded an advisory Sentencing Guidelines range of 30 to 37 months of imprisonment, two to three years of supervised released, $5,000.00 to $50,000.00 in fines, and a $100.00 special assessment. Id. at 3-4. Accordingly, Judge Bowen sentenced to Petitioner to a 36-month term of imprisonment, three years of supervised release, a $1,000.00 fine, and a $100.00 special assessment. Id. at 13-15.

On September 12, 2011, the Clerk's office received and filed a letter from Petitioner that was dated September 7, 2011 and that was addressed to Judge Bowen. Id., doc. no. 43. In the letter, Petitioner asserted that Mr. Lamar, his appointed counsel, had "abandoned" him and had not appealed the case despite Petitioner's direction that he do so. Id., doc. no. 43, p. 1. Additionally, Petitioner requested that he be appointed new appellant counsel. Id. Notably, the letter was construed as both a motion to appoint counsel and a notice of appeal and was docketed accordingly. Id., doc. nos. 43, 44.

Next, on November 4, 2011, Mr. Lamar submitted a motion to withdraw from his representation of Petitioner. Id., doc. no. 49. In the motion, Mr. Lamar recounted the fact that Petitioner had contacted the court in his September 7th letter and therein alleged that Mr. Lamar had abandoned him and requested new counsel. Id. at 1. On December 21, 2011, Judge Bowen entered an order denying Petitioner's request for new counsel as well as Mr. Lamar's motion to withdraw, noting that Mr. Lamar's obligation to represent Petitioner

extended through Petitioner's appeal, which was then ongoing, unless the Court of Appeals explicitly relieved him of that duty. Id., doc. no. 50, p. 2.

Shortly thereafter, Petitioner proceeded to file the instant § 2255 motion, which is dated December 29, 2011, and was filed by the Clerk of Court on January 3, 2012. (Doc. no. 1, p. 12.) Notably, Petitioner additionally submitted a brief in support of his motion, in which he essentially restates the grounds asserted in the motion in slightly more detail. (Doc. no. 4.) In his submitted materials, Petitioner raises the following grounds for relief: (1) his trial counsel provided ineffective assistance in that he failed to adequately investigate Petitioner's "illegal arrest" and, more specifically, in that he "convinced [Petitioner] to plead guilty without any [investigation] of the non-Shepard approved documents used to even arrest [him];" (2) his trial counsel provided ineffective assistance in that he failed to file a motion requesting a suppression hearing; and (3) his trial counsel failed to file a direct appeal despite telling Petitioner that he would do so and additionally failed to "bring all of [Petitioner's] commerce clause issues upon appeal." (Doc. no. 1, pp. 1-7; doc. no. 4.)

On March 21, 2012, Respondent filed a motion to stay the § 2255 proceedings pending the resolution of Petitioner's direct appeal. (Doc. no. 3.) Judge Bowen granted the motion to stay and directed Respondent to file a response to the § 2255 motion within sixty days of the Eleventh Circuit's resolution of the appeal. (See doc. no. 5.) On April 9, 2012, Mr. Lamar filed in that appeal a detailed brief pursuant to Anders v. California, 386 U.S. 737 (1976), in which he argued that Petitioner's guilty plea was valid and binding, that the appeal waiver was also valid and thus barred any appeal, that there was no meritorious basis on which to appeal irrespective of the appeal waiver, and that Petitioner's claims of ineffective

5

assistance in the § 2255 motion were not yet ripe for review. (See doc. no. 6-1.) On August 24, 2012, the Eleventh Circuit affirmed Petitioner's conviction and sentence and granted Mr. Lamar's motion to withdraw, noting that its independent review of the entire record revealed no issues of arguable merit. United States v. Dunn, 487 F. App'x 559, 560 (11th Cir. 2012) (*per curiam*).

In accordance with Judge Bowen's Order granting the motion to stay, Respondent then timely filed a response to the § 2255 motion. Respondent argues that the motion should be denied because Petitioner's claims are barred by the collateral attack waiver set forth in his plea agreement or because they lack merit. The Court resolves the matter as follows.

## II. DISCUSSION

### A. Effect of Collateral Attack Waiver

#### 1. Ineffective Assistance of Counsel Claims Barred by Waiver

It is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993).[1] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden in the instant case, then Petitioner's claims regarding his counsel's alleged failure to investigate and his failure

---

[1] Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See Bushert, 997 F.2d at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

to file a motion for suppression are barred from review. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack his sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 110-358, doc. no. 30, p. 3. Moreover, Judge Bowen thoroughly reviewed the terms of the plea agreement during the plea colloquy, with particular emphasis on the significance of the appeal and collateral attack waiver provision. Id., doc. no. 58, p. 11. After Judge Bowen concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Bowen. Id. at 12.

The record before the Court therefore demonstrates that the collateral attack waiver was knowing and voluntary. While Petitioner would have the Court ignore his responses to Judge Bowen's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, the Court concludes that the collateral attack waiver is valid and that Petitioner's claims regarding his counsel's alleged failure to investigate and to file a motion to suppress are barred by the waiver.

In making this determination, the Court is aware that Petitioner made those claims in the context of an assertion of ineffective assistance of trial counsel. "An ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Here, Petitioner's assertions of ineffective assistance of counsel pertain to his counsel's alleged failure to adequately investigate his prior arrests and his failure to request a suppression hearing concerning a firearm that Petitioner contends was "illegally obtained." (Doc. no. 4, p. 1.) However, nowhere in his motion or brief does Petitioner make any attempt whatsoever to connect those assertions to the validity of his guilty plea or the collateral attack waiver. In other words, because those allegations do not call into question the validity of Petitioner's guilty plea or collateral attack waiver, Petitioner's collateral attack waiver bars those claims.[2] See Williams, 396 F.3d at 1342 n.2.

### 2. No Merit to Ineffective Assistance of Counsel Claim that is Not Barred by Waiver

Notwithstanding the analysis above, Petitioner's claim that his counsel's failure to adequately investigate his "illegal arrest" pursuant to "non-Shepard approved documents" somehow amounted to coercion to plead guilty is not precluded by his appeal waiver, as "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the

---

[2]Moreover, as explained infra Part II.B, even Petitioner had not waived those claims pursuant to the collateral attack waiver, they are both barred by Petitioner's valid guilty plea.

8

validity of the plea or agreement." Williams, 396 F.3d at 1342; see also Vaca-Ortiz, 320 F.Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). As this claim challenges his counsel's performance as it relates to Petitioner entering or negotiating his guilty plea (inasmuch as Petitioner alleges that his counsel somehow "convinced" him to plead guilty by failing to adequately investigate his arrest), Petitioner's claim is not barred by the provision in the plea agreement waiving his right to collaterally attack his conviction or sentence.

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must

normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d

1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Here, Petitioner's claim that his counsel failed to adequately investigate the "non-Shepard approved documents" that he alleges were used to facilitate that arrest fails to establish that his guilty plea was not entered into knowingly and voluntarily. First, as to Petitioner's vague assertion that Mr. Lamar "convinced him to plead guilty" – an assertion on which Petitioner does not elaborate and which the Court presumes is somehow connected to Mr. Lamar's alleged failure to investigate – that assertion is directly contradicted by Petitioner's sworn testimony during his plea hearing that no one had forced, threatened, or pressured him to plead guilty. CR 110-358, doc. no. 58, pp. 10-11. In fact, Petitioner additionally stated, in response to Judge Bowen's question, that he was "entirely satisfied with Mr. Lamar's representation of [him] and his preparation and handling of [his] case." Id. at 6. As noted above, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; see also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely.") Thus, given his former sworn testimony, Petitioner cannot now claim that he was coerced into pleading guilty.

Even if the Court were to ignore the fact that Petitioner's allegation of coercion is directly contradicted by his sworn testimony in the plea hearing, Petitioner simply fails to

show that he has suffered any prejudice due to Mr. Lamar's alleged failure to investigate the "non-Shepard approved documents" that he asserts were used to facilitate his arrest. In Shepard v. United States, the Supreme Court of the United States explained that 18 U.S.C. § 924(e), "popularly known as the Armed Career Criminal Act (ACCA), mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies." 544 U.S. 13, 15-16 (2005). In order to determine the nature of a prior conviction for purposes of the ACCA, a sentencing court may, in addition to the fact of conviction and the prior offense's statutory elements, look at "the charging documents, plea agreements and colloquies, jury instructions and other comparable judicial records." United States v. Ortiz, 413 F. App'x 114, 117 (11th Cir. 2011) (citing to Shepard, 544 U.S. at 16) (*per curiam*). It is the latter documents that are referred to as "Shepard-approved materials." Id. at 118.

Here, critically, Petitioner was not sentenced pursuant to § 924(e), the ACCA, but instead pleaded guilty to a single charge of "felon in possession of a firearm" under 18 U.S.C. § 922(g)(1). See CR 110-358, doc. no. 42, p. 1; PSI ¶ 1. Accordingly, Petitioner was not sentenced to the mandatory minimum 15-year sentence under the ACCA, nor did he receive any sentence enhancement whatsoever pursuant to that provision. PSI ¶¶ 13-24. Because Petitioner was sentenced pursuant to § 922(g)(1) and not the ACCA, Shepard-approved materials – which, again, are used solely for the purposes of determining the *nature* of a prior felony for purposes of the ACCA rather than the simple *existence* of a prior felony – have no bearing on Petitioner's arrest, conviction, or sentence. Ortiz, 413 F. App'x at 117. That being the case, whether the materials used to indict and sentence Petitioner were

Shepard-approved is entirely irrelevant, and the Court can ascertain no reason whatsoever as to why Petitioner's counsel might have needed to investigate that topic. Moreover, Petitioner specifically admitted under oath during his Rule 11 hearing that he had two prior felony convictions for possession of cocaine. CR 110-358, doc. no. 58, p. 16. At that hearing, a government witness testified that his investigation of Petitioner had revealed those two prior convictions; when Petitioner was later asked as to what part of the government witness's testimony he disagreed with – including the portion about his prior convictions – Petitioner said, "Nothing, sir." Id. at 17.

In sum, Petitioner has failed to show that he was prejudiced by Mr. Lamar's alleged failure to investigate, Strickland, 466 U.S. at 687, and he has also failed to demonstrate that the outcome of the plea process would have been different – that he would not have pleaded guilty – had Mr. Lamar so investigated, Hill, 474 U.S. at 59. Accordingly, Petitioner is not entitled to relief on the claim of ineffective assistance of counsel that he asserts concerning coercion.

### B. Petitioner's Guilty Plea Was Knowing and Voluntary

As noted above, even if Petitioner's claims of ineffective assistance of counsel for failure to investigate and failure to file a motion to suppress were not barred by the collateral attack waiver, they are both barred by Petitioner's guilty plea. Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea

without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "Clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (quotation omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea

. . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, the extensive plea colloquy conducted by Judge Bowen addresses each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Bowen informed Petitioner in clear terms of the charge to which Petitioner was pleading guilty, as well as the maximum penalty that might be imposed in the event of Petitioner's conviction, and Petitioner testified that he understood the charge and the maximum penalty that might be imposed. CR 110-358, doc. no. 58, pp. 6-7. Judge Bowen also provided a detailed explanation of the rights that Petitioner would forfeit by pleading guilty; Petitioner stated that he understood these rights and that his decision to plead guilty would result in a waiver of these rights. Id. at 11-12. In addition, Petitioner testified that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence, and that no one had forced, pressured, or induced him to plead guilty. Id. at 10-13.

In short, despite Petitioner's markedly vague and self-serving statement that Mr. Lamar somehow "convinced" him to plead guilty (doc. no. 4, p. 1), Judge Bowen's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. The record is therefore clear as to the intelligent and voluntary entry of Petitioner's guilty plea, and, as explained in greater detail supra, Petitioner fails to show otherwise by asserting that his attorney failed to adequately investigate his arrest. See Part II.A.2. Accordingly, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily.

That being the case, Petitioner's claims that his trial counsel provided ineffective

assistance by failing to adequately investigate and by failing to request a suppression hearing are barred by the guilty plea. "A defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all *nonjurisdictional* defects in that defendant's court proceedings." United States v. Yunis, 723 F.2d 795, 796 (11th Cir. 1984) (emphasis in original). Once a defendant enters a knowing, voluntary guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Here, the guilty plea was entered knowingly and voluntarily, Petitioner has provided no reason whatsoever to doubt the competence of his counsel, both claims assert the deprivation of constitutional rights that occurred prior to the entry of the guilty plea, and neither claim has any bearing on issues of jurisdiction. Yunis, 723 F.2d at 796. Thus, even if the collateral attack waiver did not bar Petitioner's claims of ineffective assistance of counsel for failure to investigate and failure to file a motion to suppress, Petitioner's guilty plea provides an additional bar against them.

### C. Ground Three Fails Under Strickland

Finally, in Ground Three of his motion, Petitioner asserts that he received ineffective assistance of counsel due to Mr. Lamar's failure to file a direct appeal even when Petitioner specifically requested that he do so, and due to Mr. Lamar's failure to "bring all of [Petitioner's] commerce clause issues upon appeal." (Doc. no. 1, p. 7; doc. no. 4, p. 2.) Notably, whether a claim of ineffective assistance of counsel based on counsel's failure to consult with his client concerning filing a direct appeal survives a collateral attack waiver is currently a question on appeal before the Eleventh Circuit. See Jones v. United States, No.

16

12-10562 (11th Cir. Feb. 1, 2012). Fortunately, however, this Court need not address the effect of the collateral attack waiver on Ground Three of the instant petition since, notwithstanding the waiver, the claims asserted in Ground Three fail on the merits under Strickland. Accordingly, the Court will apply the same two-part test for prejudice and ineffectiveness set forth supra Part II.A.2, and it makes no finding as to whether Petitioner's claim that Mr. Lamar failed to file a direct appeal as directed is barred by the collateral attack waiver.[3]

First, as to Petitioner's claim that he received ineffective assistance due to Mr. Lamar's failure to file a direct appeal, Petitioner fails to show prejudice based on that assertion. Petitioner filed a *pro se* notice of appeal on September 12, 2011, CR 110-358, doc. no. 44, and his appeal had been pending for nearly four months when he filed his federal petition, in which he somewhat inexplicably argued that Mr. Lamar had failed to file a direct appeal (doc. no. 1, p. 7). If Petitioner's intent is to assert on a hyper-literal level that he received ineffective assistance because it was he himself – and not Mr. Lamar – who filed the actual notice of appeal, then Petitioner has entirely failed to demonstrate, nor has he even attempted to explain, how he suffered any prejudice as a result of that fact. Even acknowledging that Petitioner's notice of appeal was untimely filed, and allowing that the cooperation of counsel might have served to help avoid that issue, the fact is that the untimeliness of the appeal was never addressed outside of a single remark in Judge Bowen's December 21, 2011 Order denying Mr. Lamar's motion to withdraw, see CR 110-358, doc.

---

[3]Notably, the Court's decision to analyze Ground Three on the merits does not result in any prejudice to Respondent, given that Respondent has already argued the merits of Ground Three in its brief. (Doc. no. 6, pp. 11-12.)

17

no. 50, p. 1, let alone used for a basis of dismissal by the Eleventh Circuit, see Dunn, 487 F. App'x at 560. In other words, Petitioner has not shown prejudice based on who technically *filed* the notice of appeal or based on the appeal's untimeliness.

If Petitioner's intent is to assert that he received ineffective assistance based on his expectation that he would not actually be permitted to bring a direct appeal, or that the appeal would ultimately be dismissed as untimely, Petitioner fails to show prejudice on that basis as well, given that his direct appeal *did* go forward and was *not* dismissed as untimely. Moreover, pursuant to Judge Bowen's denial of Mr. Lamar's motion to withdraw, and in consideration of Mr. Lamar's later-submitted Anders brief addressing the merits of Petitioner's appeal, Petitioner was afforded the assistance of counsel on direct appeal. Finally, as noted above, the Eleventh Circuit did not simply dismiss Petitioner's appeal as untimely, but instead conducted an "independent review of the entire record" and found that "counsel's assessment of the relative merit of [the] appeal [was] correct." Dunn, 487 F. App'x at 560. Accordingly, the Eleventh Circuit found no issues of arguable merit and affirmed Petitioner's conviction and sentence. Id. In light of the fact that Petitioner received full consideration by the Eleventh Circuit, as well as the assistance of appointed counsel, on his direct appeal, Petitioner cannot show prejudice based on his assertion that Mr. Lamar failed to file a direct appeal.[4] Strickland, 466 U.S. at 687. Moreover, he does not allege or otherwise demonstrate that he would not have pleaded guilty were it not for Mr. Lamar's failure to file a direct appeal, especially considering that any events concerning the filing of

---

[4]In fact, it is unclear what sort of relief Petitioner requests pursuant to that claim, or what sort of relief could hypothetically be granted, given that the direct appeal that he seems to imply he was denied *did*, in fact, take place.

18

a direct appeal took place *after* Petitioner entered his guilty plea on March 25, 2011, and judgment was entered on July 6, 2011.

As to Petitioner's associated claim in Ground Three that Mr. Lamar failed to bring "all of [Petitioner's] commerce clause issues upon appeal," Petitioner fails to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In short, an indigent defendant has no constitutional right to "compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to press those points." Jones v. Barnes, 463 U.S. 745, 751 (1983) (reversing the lower court's finding of ineffective assistance of counsel where counsel failed to raise certain claims as directed by his client). Here, Petitioner does not allege that Mr. Lamar's decision to refrain from raising certain points was not the result of professional judgment. Moreover, Petitioner, outside of his own self-serving and conclusory statement (doc. no. 4, p. 2), does not explain how he was in any way prejudiced by Mr. Lamar's failure to raise those points. Strickland, 466 U.S. at 687. In fact, Petitioner does not even identify the nature of the claims that he alleges Mr. Lamar failed to raise on appeal beyond broadly identifying them as "commerce clause issues." (Doc. no. 4, p. 2.)

In sum, Petitioner is not entitled to relief on any of the three grounds that he asserts in his § 2255 motion.

## III. CONCLUSION

For the reasons set forth above, the Court finds that Petitioner is not entitled to relief under § 2255. The Court therefore **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be

**ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 28th day of February, 2013, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE